FILED
4/23/2021 1:47 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Connie Jones DEPUTY

CAUSE NO. DC-21-05108

| | | |
|---|---|---|
| GREGG THOMAS, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF SYLVIA YVONNE THOMAS<br>*Plaintiffs,*<br><br>v.<br><br>CANTEX HEALTH CARE CENTERS III LLC; AND FW SENIOR COMMUNITY LTD. CO<br>*Defendants* | § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br><br>192nd<br><br><br><br>JUDICIAL DISTRICT<br><br><br><br>DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

COMES NOW Gregg Thomas, Individually and on behalf of the estate of Sylvia Yvonne Thomas, who brings this cause of action against Cantex Health Care Centers III LLC; AND FW Senior Community LTD. CO (hereinafter referred to as "Defendants").

### A. DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 3 of Texas Rule Of Civil Procedure 190.4.

### B. PARTIES

2. Gregg Thomas is an individual and at all relevant times was a resident of Texas. At the time of the Plaintiffs injuries, Sylvia Yvonne Thomas was also a resident of Texas.

3. Defendant Cantex Health Care Centers III LLC, located at 2537 Golden Bear Drive, Carrollton, TX 75006 USA may be served with process through its registered agent, David Eriksen, also located at 2537 Golden Bear Drive Carrollton, TX 75006 USA. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which Sylvia Yvonne Thomas was a resident in 2020.

4. Defendant Cantex Health Care Centers III LLC, located at 2537 Golden Bear Drive, Carrollton, TX 75006 USA may be served with process through its registered agent, David Eriksen, also located at 2537 Golden Bear Drive Carrollton, TX 75006 USA. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which Sylvia Yvonne Thomas was a resident in 2020.

5. Defendants' facility, The Harrison at Heritage, was located 4600 Heritage Trace Pkwy, Fort Worth, TX 76244. At the time of the events giving rise to this lawsuit, this facilities ownership was had its headquarters located in Dallas County, Texas.

6. To the extent that the above-named Defendants are conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure and Plaintiffs hereby demand that upon answering this suit, that they answer in their correct legal name and assumed name.

## C. JURISDICTION AND VENUE

7. Plaintiffs affirmatively plead that this Court has jurisdiction because the damages sought are in excess of the minimum jurisdictional limits of the Court. Furthermore, all of the causes of action asserted, in this case, arose in the State of Texas, and all of the parties to this action are either residents of the State of Texas or conduct business in this State and committed the torts that are the subject of this suit in whole or in part in Texas, as hereafter alleged in more detail. Therefore, this Court has both subject matter and personal jurisdiction over all of the parties and all of the claims.

8. Pursuant to Section 15.002(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE (CPRC), venue is proper in Dallas County because Defendants conducted business in Dallas County

at all relevant times and all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas and no mandatory venue provision applies.

### D. FACTS

9. Sylvia Yvonne Thomas became a resident at The Harrison at Heritage (Harrison) believed to be owned and operated by Cantex Health Care Centers III LLC; AND FW Senior Community LTD. CO, at all relevant times as alleged herein. Sylvia Yvonne Thomas was admitted into Harrison on or in 2019. At all relevant times, Harrison was required to provide caregivers and related services to assist Sylvia Yvonne Thomas with her activities of daily living and rehabilitation. Defendants owned, managed, operated, supervised and/or staffed the rehabilitation center at which Sylvia Yvonne Thomas became a resident. At the time of admission to Harrison, Sylvia Yvonne Thomas had certain comorbidities that required skilled nursing care.

10. Defendants knew of the existence of Sylvia Yvonne Thomas's comorbidities at the time of her admission and represented to Plaintiffs that it was able, knowledgeable, and sufficiently staffed to adequately care for Sylvia Yvonne Thomas's conditions. Plaintiffs relied on this representation in selecting Defendants as health care provider.

11. Defendants formulated and/or were required to formulate various Focus Plans (Care Plans) to account for Sylvia Yvonne Thomas's specifically identified conditions and potential complications related to her condition at admission and any ensuing conditions that developed or would develop during her residence.

12. Further, knowing that Sylvia Yvonne Thomas would need special care and assistance in her activities of daily living, Harrison admitted Sylvia Yvonne Thomas into its facility and under its care, and further represented to Plaintiffs and indicated that Defendants' facility

and services were equipped to meet Sylvia Yvonne Thomas's needs. Plaintiffs relied on Defendants' representation when choosing a facility and health service to assist with Sylvia Yvonne Thomas's activities of daily living and provide appropriate care based upon her conditions.

13. Harrison provided what Plaintiffs believed and understood was skilled nursing care and ongoing assessments of Sylvia Yvonne Thomas. It was also to Plaintiffs' belief and understanding that Defendants were providing proper medical oversight and care through properly trained and qualified individuals to assure that Sylvia Yvonne Thomas was safe and properly cared for at all relevant times.

14. Despite these representations, Defendants failed to properly monitor and care for Sylvia Yvonne Thomas, which ultimately led to Sylvia Yvonne Thomas suffering pain and death from complications with COVID-19.

15. As of March 2020, Harrison nursing staff and administration knew or should have known of the Texas State Governor's Declaration of a State of Emergency due to the COVID-19 epidemic. Nursing Home facilities such as Harrison were required to take extra precaution in ensuring that their residents, composed of vulnerable populations of people, were being protected from COVID-19. Precautions advised from the Centers for Medicare &Medicaid Services included creating and implementing an infection control plan that accounted for COVID-19. Facilities such as Harrison were to ensure regular COVID-19 symptom screening for residents, staff, vendors, and visitors. Additionally, Harrison staff was expected to use personal protective equipment at all times when interacting with residents, staff, vendors, and visitors.

16. Harrison's nursing staff knew or should have known that Sylvia Yvonne Thomas was highly susceptible to communicable diseases such as COVID-19. Harrison's nursing staff knew or should have known the importance of adhering to an implemented infection control plan. Harrison failed to ensure their residents' safety, and Sylvia Yvonne Thomas contracted COVID-19.

17. During Sylvia Yvonne Thomas's treatment by Harrison, Plaintiffs' relied on Defendants' representations. It was their belief and understanding that Sylvia Yvonne Thomas was properly cared for by all Defendants at all times. However, based upon Defendants' negligence and other tortious misconduct alleged herein, Plaintiffs' suffered substantial injury and damages, including Sylvia Yvonne Thomas's pain, suffering, and ultimate death.

### E. MEDICAL NEGLIGENCE

18. Defendants are healthcare providers licensed by the State of Texas to provide health care.

19. The subject injuries caused by the tortious misconduct of Defendants, and each of them, occurred while Defendants' agents were within the regular scope of their employment by Defendants, and under the doctrine of *respondeat superior*, Defendants may be held liable for the negligent acts of its agents/employees committed during the regular course and scope of their agency/employment even if the employer did not personally commit a wrong.

20. Defendants owed Sylvia Yvonne Thomas a duty of care to exercise that degree of care required by Sylvia Yvonne Thomas's known physical conditions, which duty of care these Defendants breached by the acts and omissions of negligence of Defendants and their agents, employees, and representatives, including the following:

a. Failing to observe, intervene, and care for Sylvia Yvonne Thomas ;

b. Failing to provide the medical and nursing care reasonably required for Sylvia Yvonne Thomas's known conditions;

c. Failing to prevent Sylvia Yvonne Thomas from contracting COVID-19

d. Failing to provide the appropriate supervision and training to its staff and personnel that were providing care to Sylvia Yvonne Thomas, including appropriate care related to Sylvia Yvonne Thomas's treatment needs at all relevant times.

21. Defendants further violated applicable Federal and State statutes that were enacted to protect the class of individuals, like Sylvia Yvonne Thomas, who reside in nursing facilities by, among other acts and omissions, failing to:

a. Admitting or retaining a resident whose needs could not be met by the facility, in violation of 40 T.A.C. § 92.41(e)(1)

b. Failed to ensure that Sylvia Yvonne Thomas received and that the facility provided the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Sylvia Yvonne Thomas, as defined by and in accordance with the comprehensive assessment and plan of care, as required by 40 T.A.C. § 19.901;

c. Failing to maintain staffing so as to ensure that each resident receives the kind and amount of supervision and care required to meet Sylvia Yvonne Thomas's basic needs, as required by 40 T.A.C. § 92.41 (a)(3)(C)(V);

d. Ensure that the individual's service plan or care plan be properly updated upon a significant change in condition, based upon an assessment of the resident, in accordance with 40 T.A.C. § 92.41(c)(2).

22. Based upon Defendants' failure to meet the standard of care as described herein, Sylvia Yvonne Thomas would show that Defendants' negligence and otherwise tortious conduct was a proximate cause of damages suffered by Sylvia Yvonne Thomas and Plaintiffs as alleged herein.

## F. CORPORATE NEGLIGENCE

23. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

24. At all relevant times, Defendants jointly and singularly owed Plaintiffs' a legal duty to provide the same level of medical care that a reasonable, prudent, similar business that owns, operates, manages, and/or controls a skilled nursing facility would have provided under the same or similar circumstances, including but not limited to exercising that degree of care required by Sylvia Yvonne Thomas's known physical and mental condition.

25. Defendants were required to ensure that their respective medical facilities had sufficient trained medical and nursing staff to provide the necessary medical treatment, monitoring, and supervision of all residents, including Sylvia Yvonne Thomas. Defendants had an obligation to sufficiently staff their respective medical facilities to ensure that each of their residents received the necessary care and services for them to attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with the resident's comprehensive assessment and plan of care. This included Sylvia Yvonne Thomas. This obligation required Defendants to sufficiently staff their respective medical facilities based not only on the number of residents residing in each facility but also on the medical needs of those residents.

26. In addition, Defendants were required to properly capitalize the medical facility to ensure that the required medical and nurse staffing, medical treatment, monitoring, and supervision of all residents, including Sylvia Yvonne Thomas, was provided.

27. Through Defendants' management and operational control of Harrison, Defendants engaged in numerous acts that affected resident medical care in the facility, including but not limited to (i) creating, setting, funding and/or implementing budgets; (ii) monitoring resident acuity levels; (iii) setting and monitoring staffing levels of nursing and medical staff; (iv) controlling resident admissions and discharges; and (v) controlling the number of hours of direct care provided to residents of the facility by licensed nurses and Certified Nursing Aides (hereinafter "CNAs") employed by Defendants. Each of these managerial and operational functions directly impacted the quality of care delivered to Sylvia Yvonne Thomas at each facility and were taken in furtherance of operational and managerial objectives.

28. In addition, based on information and belief, Defendants substantially derived their revenue and profits through their operation of their medical facility from the receipt of taxpayer funds through federal and state-funded Medicare and Medicaid programs. The rate at which a skilled nursing facility is compensated by Medicare for the for the delivery of skilled nursing care and services is normally based upon the "acuity" level of the residents in the facilities. "Acuity" is a term commonly used by healthcare providers and can be defined as the measurement of the intensity of nursing care required by a resident. Residents with higher acuity levels place higher demands for care and services on the skilled nursing facility and its staff. Therefore, the care provided to these residences is compensated at higher levels.

29. Acuity levels are reflected in the resident's Resource Utilization Group score ("RUG") of the resident. RUG scores are contained in section Z of each resident's Minimum Data Set (hereinafter "MDS"). An MDS is required to be completed by every nursing home for every resident in a skilled nursing facility regardless of their payor status.

30. The Centers for Medicare and Medicaid Services (hereinafter "CMS") is the federal agency tasked with regulating all skilled nursing facilities in this country. Through the years, CMS has sponsored multiple studies to determine the amount of time that skilled nursing facility staff spent caring for residents, as well as other elements of resident care. As a consequence of these studies, CMS is able to set a number of hours of direct care that is expected to be provided to residents by licensed nurses and CNAs based on the skilled nursing facility's total acuity level. This expectation is expressed in terms of "hours per patient day" or "HPPD"

31. Based on information and belief, Defendants engaged in a systematic process of ensuring that their medical facility maintained the highest acuity levels possible while at the same time providing insufficient capitalization and staff to meet the individual needs of their residents during the time that Sylvia Yvonne Thomas was a resident in the facility. This purposeful undercapitalization and understaffing directly resulted in their facility's failure to provide the necessary and basic services that Sylvia Yvonne Thomas needed to prevent Sylvia Yvonne Thomas from sustaining the injuries pleaded herein.

32. Defendants further breached their duty of care to Sylvia Yvonne Thomas by engaging in numerous improper acts and omissions constituting corporate negligence and ratification of corporate negligence, including but not limited to the following:

    a.    Failing to ensure that appropriate levels of medical and nursing staff were maintained in their facility to provide necessary medical care, monitoring, and supervision of residents, including Sylvia Yvonne Thomas ;

    b.    Staffing the facility below what was necessary to properly care for each of the facility's resident's needs, including those of Sylvia Yvonne Thomas , based on the acuity level of all residents in each facility, including Sylvia Yvonne Thomas ;

    c.    Failing to provide sufficient training and follow-up review of medical and nursing staff to ensure that the medical and nursing staff had the necessary training to provide the required medical care, monitoring, and supervision of residents, including Sylvia Yvonne Thomas ;

    d.    Failing to ensure that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment for Sylvia Yvonne Thomas; and

    e.    Failing to properly capitalize the facility to ensure that the required medical treatment, monitoring, and supervision of all residents, including Sylvia Yvonne Thomas, was provided.

33. As outlined above, Defendants failed to meet the applicable standards of care that Defendants owed to Plaintiffs, and this failure was a proximate cause of severe damages suffered by Plaintiffs.

## G. GROSS NEGLIGENCE

34. The above-cited acts and/or omissions by Defendants directly and through their agents, representatives, and employees, detailed above, amount to gross negligence because when viewed objectively from Defendants' standpoint at the time in question, such acts and/or

omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm, of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference and/or malice with regard to the rights, safety, or welfare of others.

35. Defendants had direct prior notice of Sylvia Yvonne Thomas's vulnerabilities yet failed to take any reasonable action to prevent the foreseeable events as alleged herein.

36. The acts and omissions of gross negligence attributed to the Defendants were committed and/or ratified by vice principals of and/or manages acting in managerial capacity. By reasons of such conduct, Plaintiffs are entitled to and therefore asserts a claim for punitive or exemplary damages in an amount sufficient to punish and deter Defendants and others like it for such conduct in the future pursuant to Texas Civil Practices & Remedies Code Section 41.001, et seq. and relevant case law.

## H. DAMAGES

37. Defendants breach of duty proximately caused injuries and damages to Plaintiffs, which resulted in the following damages:

    e.   Physical pain in the past.

    f.   Mental anguish in the past.

    g.   Mental anguish in the future.

    h.   Disfigurement in the past.

    i.   Physical impairment in the past.

    j.   Medical expenses in the past.

    k.   Physical impairment in the past.

    l.   Medical expenses in the past.

  m.  Funeral and burial expenses.

## I. JURY DEMAND

38. Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## J . CONDITION PRECEDENT

39. Plaintiffs would show that Plaintiffs have complied with the provisions set forth in Section 74.051 of the Civil Practice and Remedies Code, in that Defendants have been notified of Plaintiffs claim(s) prior to the filing of this lawsuit.

## K. REQUEST FOR DISCLOSURE

40. Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## L. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have judgment against the Defendants for:

  a. Economic damages in excess of the minimal jurisdictional amount of this Court;

  b. Non-economic damages in excess of the minimal jurisdictional amount of this Court;

  c. Pre-judgment and post-judgment interest as allowed by law;

  d. Costs of suit; and

  e. All such other and further relief the Court deems appropriate.

            Respectfully submitted,
            **THE CLINESMITH FIRM**

BY: /s/ Curtis Clinesmith
Curtis Clinesmith
State Bar No. 24003401
Alexis Nicole Ondris
State Bar No. 24102869
325 N. St. Paul, 29th Floor
Dallas, Texas 7520
972-677-7764 Telephone
972-390-0031 Facsimile
clinesmith@clinesmithfirm.com

*ATTORNEYS FOR PLAINTIFFS*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

The Clinesmith Firm Service on behalf of Curtis Clinesmith
Bar No. 24003401
clinesmith@clinesmithfirm.com
Envelope ID: 52750318
Status as of 4/24/2021 9:55 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| The Clinesmith Firm Service | | clinesmith@clinesmithfirm.com | 4/23/2021 1:47:37 AM | SENT |
| Alexis Ondris | | alexis@clinesmithfirm.com | 4/23/2021 1:47:37 AM | SENT |
| Hannah Norris | | hannah@clinesmithfirm.com | 4/23/2021 1:47:37 AM | SENT |
| Michael Johnson | | michael@clinesmithfirm.com | 4/23/2021 1:47:37 AM | SENT |