IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GLORIA MOODY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00160-O |
| | § | |
| LAKE WORTH INVESTMENTS | § | |
| INC. d/b/a LAKE WORTH | § | |
| NURSING HOME, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Notice of Removal (ECF No. 1), filed February 18, 2021; Plaintiff's Motion to Remand (ECF No. 14), filed April 28, 2021; and Defendant's Response (ECF No. 16), filed April 28, 2021. Finding the Court lacks subject-matter jurisdiction, the Court **GRANTS** the Motion to Remand and **REMANDS** this action to the 153rd Judicial District Court of Tarrant County, Texas.

### I.   BACKGROUND

This negligence case arises from the death of Frank Moody ("Frank"), a resident of Defendant Lake Worth Nursing Home ("Defendant") and Plaintiff Gloria Moody's husband. Pet. 2, ECF No. 1-5. Allegedly vulnerable to develop ulcers and infections, Frank suffered from co-morbidities, lacked mobility, and required constant assistance. *Id*. Plaintiff placed Frank with Defendant, believing its employees were trained and skilled enough to care for Frank's significant medical needs. *Id*. In 2020, Frank suffered injuries from pressure ulcers, contracted COVID-19, and ultimately died in July under Defendant's care. *Id*. Plaintiff alleges that Defendant failed to exercise the standard of care that a nursing home would have exercised under the same or similar circumstances. *Id.* Specifically, Plaintiff alleges that Defendant was negligent and grossly

1

negligent due to its (1) failure to observe, intervene, and care for Frank; (2) neglect; (3) failure to provide medical and nursing care reasonably required for Frank's known medical conditions; and (4) failure to provide appropriate supervision and training to its staff and personnel. *Id*.

Defendant timely removed to federal court, proposing three alternate bases for removal: (1) Plaintiff's claims are completely preempted by federal law under the PREP Act, which provides an exclusive cause of action for "Covered Persons" who designed, manufactured, used or administered "Covered Countermeasures" during the COVID-19 pandemic; (2) Plaintiff necessarily implicates a federal issue in her petition; and (3) Defendant is a federal officer because it "acted under" the direction of a federal official. Not. Removal, ECF No. 1. The Court prompted Defendant to brief its alleged grounds for subject-matter jurisdiction, and Plaintiff subsequently filed a motion to remand. Mot. Remand, ECF No. 14. Defendant responded, and the motion is now ripe for review. Resp. ECF No. 16. The Court will address each ground for removal in turn.

## II. LEGAL STANDARD

Generally, any civil action brought in a state court where the United States District Courts have original jurisdiction may be removed by defendants to the United States District Court for the district and division embracing the place where the original suit pends. 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, the removal statute is subject to strict construction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (recognizing that removal "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system"); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Absent diversity jurisdiction,

cases cannot be removed if the complaint fails to affirmatively allege a federal claim under the well-pleaded complaint rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 5–6 (2003).

Article III, Section 2, Clause 1 of the United States Constitution provides in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]" "Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, [the Supreme Court] has long construed the statutory grant of federal-question jurisdiction as conferring a more limited power." *Merrell Dow Pharm.*, 478 U.S. at 807 (citations omitted).

Whether a claim arises under federal law must be determined by reference to the well-pleaded complaint, and a defense that raises a federal question is inadequate to confer federal jurisdiction. *See id.* at 808 (citing *Franchise Tax Bd. v. Constr. Lab. Vacation Tr.*, 463 U.S. 1, 9–10 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)). "Since a defendant may remove a case only if the claim could have been brought in federal court, 28 U.S.C. § 1441(b), moreover, the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Id.* The "arising-under" provision for federal-question jurisdiction is invoked "by and large by plaintiffs pleading a cause of action created by federal law (*e.g.,* claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). But a court may determine that a state-law claim "arises under" federal law if the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

An exception to the well-pleaded complaint rule exists where there is complete preemption of the state claim by federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The

complete preemption doctrine provides that the preemptive force of some federal statutes is so strong that "it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," such that removal is possible. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir. 2012) (quoting *Caterpillar Inc.*, 482 U.S. at 393). For example, the Copyright Act is a federal statute that completely preempts the substantive field. *Id.* at 706. Complete preemption for the purpose of establishing federal subject-matter jurisdiction is, thus, a purely jurisdictional doctrine distinct from ordinary preemption's defensive properties. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). "Congress can indicate its preemptive intent either expressly through a statute's plain language, or impliedly through a statute's 'structure and purpose.'" *Id.*

### III.   ANALYSIS

Defendant asserts three reasons why the Court has subject-matter jurisdiction over this case: (1) complete preemption under the PREP Act; (2) federal-question jurisdiction under *Grable*; and (3) a federal-officer as a party. Not. Removal, ECF No. 1. The Court first provides background on the PREP Act and then addresses each ground Defendant asserts in turn.

#### A.  The PREP Act

When the PREP Act applies, it provides broad immunity "from suit and liability under [the] Federal and State law Fund" ("Process Fund"), administered by the Health and Human Services Secretary, which is designed to provide "timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure[.]" 42 U.S.C. §§ 247d-6e(a), 247d-6e(b)(1). When applicable, it divests courts of subject-matter jurisdiction to review the Secretary's administration of the Process Fund and may not provide any other remedy. *See* 42 U.S.C. §§ 247d-6e(b)(5)(C), 247d-6e(d)(4). Under the PREP Act a claimant is permitted to file suit in federal court only when a case involves "death or serious

physical injury proximately caused by willful misconduct[,]" in which the claimant has exhausted administrative avenues, declined to accept compensation from the Process Fund, and files and maintains the case in the United States District Court for the District of Columbia. *Id.* §§ 247d-6d(d)(1)–(5), 247d-6d(e)(1).

The PREP Act's immunity however only protects a "Covered Person" from claims of loss arising from the use of a "Covered Countermeasure" during the COVID-19 pandemic. 42 U.S.C. § 247d-6d(a)(1). Under the PREP Act, a "Covered Countermeasure" is limited to "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug," "biological product," "or device . . . that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [FDCA]";[1] or "a respiratory protective device that is

---

[1] A "qualified pandemic or epidemic product" is a "drug," "biological product," or "device" that is

> (i) a product manufactured, used, designed, developed, modified, licensed, or procured (I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or (II) to limit the harm such pandemic or epidemic might otherwise cause;
> (ii) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in clause (i); or
> (iii) a product or technology intended to enhance the use or effect of a drug, biological product, or device described in clause (i) or (ii) . . . .

42 U.S.C. § 247d-6d(i)(7)(A).

A "security countermeasure" is a "drug," "biological product," or "device" that

> (i)(I) the Secretary determines to be a priority ... to diagnose, mitigate, prevent, or treat harm from any biological, chemical, radiological, or nuclear agent identified as a material threat [by the Secretary of Homeland Security], or to diagnose, mitigate, prevent, or treat harm from a condition that may result in adverse health consequences or death and may be caused by administering a drug, biological product, or device against such an agent; (II) the Secretary determines ... to be a necessary countermeasure; and (III) (aa) is approved or cleared under [the FDCA] or licensed under [the PHSA]; or (bb) is a countermeasure for which the Secretary determines that sufficient and satisfactory clinical experience or research data (including data, if available, from pre-clinical and clinical trials) support a reasonable conclusion that the countermeasure will qualify for approval or licensing within 10 years after the date of a determination [that procurement of the countermeasure is appropriate]; or
> (ii) is authorized for emergency use under section 564 of the [FDCA].

approved by the National Institute for Occupational Safety and Health [NIOSH] . . . and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title." 42 U.S.C. § 247d-6d(i)(1).

Defendant argues that the PREP Act preempts any state-law negligence claims relating to Frank's death because Defendant implemented COVID-19 procedures. Not. Removal, ECF No. 1. The Court must therefore decide whether the PREP Act has a preemptive force "so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393.

There is no indication that Congress, through the statute's language, declared traditional state law negligence cases involving entities implementing COVID safety protocols were to be preempted. *See Elam*, 635 F.3d at 803. Complete preemption then, if it exists, must be impliedly found through the statute's structure and purpose. *Id.* Of course, it is assumed that the States' historic police powers are not superseded unless Congress clearly and manifestly intended to do

---

42 U.S.C. § 247d-6b(c)(1)(B); *see also id.* § 247d-6d(i)(1)(B).

A "biological product" is "a virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, protein, or analogous product, or arsphenamine or derivative of arsphenamine (or any other trivalent organic arsenic compound), applicable to the prevention, treatment, or cure of a disease or condition of human beings." 42 U.S.C. § 262(i); *see also id.* §§ 247d-6b(c)(1)(B), 247d-6d(i)(7).

A "device," a term adopted from the FDCA, means "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory" that is

> (A) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,
> (B) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
> (C) intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.

21 U.S.C. § 321(h)(1); *see also id.* §§ 247d-6b(c)(1)(B), 247d-6d(i)(7).

so. *Id*. at 803-04. To make this determination, the Court must analyze Plaintiff's claims and determine whether those claims fall within the scope of the PREP Act.

It is important to note at the start that state negligence and wrongful death actions against nursing homes are not completely preempted by the PREP Act, according to nearly all federal district courts to address the issue. *See Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 537 (N.D. Tex. 2021) (Pittman, J.) (finding no complete preemption); *Dupervil v. Alliance Health Operations, LLC*, No. 20-cv-4042-PKCPK, 2021 WL 355137, at *12 (E.D.N.Y. 2021) (same); *see also Gunter v. CCRC Opco-Freedom Square, LLC*, 8:20-cv-1546-T-36TGW, 2020 WL 8461513, at *1 n.1 (M.D. Fla. Oct. 29, 2020) (same); *Sherod v. Comprehensive Healthcare Mgmt. Serv., LLC*, No. 20-cv-1198, 2020 WL 6140474 at *6 (W.D. Pa. Oct. 16, 2020) (same); *Martin v. Serrano Post Acute LLC*, No. 20-5937DSF, 2020 WL 5422949 at *3 (C.D. Cal. Sept. 10, 2020) (same); *Lutz v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1207, 1218 (D. Kan. 2020) (remanding "[b]ecause the PREP Act does not apply, it cannot be used to establish federal question jurisdiction under the doctrine of complete preemption").

Apart from these precedents, when complete preemption applies, it only affects those claims that fall within the scope of the relevant federal statute. *See Beneficial Nat'l Bank*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."). The PREP Act is a narrow statute that carves out specific Covered Persons and specific Covered Countermeasures that are entitled to immunity. The most notable countermeasures appear to be vaccinations, devices, or medication designed to or at least thought to reduce the severity of COVID-19, such as Remdesivir, throughout the course of the pandemic.

Defendant argues that the PREP Act applies to this case because Defendant implemented Center for Disease Control Guidelines in the creation of their COVID-19 Plan for its nursing home.

7

Supp. Br. 12, ECF No. 11 ("The plan included additional instruction on [personal protective equipment] supplies, usage, and practices; additional sanitation procedures, and isolation procedures including cold, warm and hot zones."). Defendant asserts that the use of COVID-19 testing kits, face masks, gowns, gloves, and other personal protective equipment are qualified pandemic or epidemic products and covered countermeasures under the PREP Act, because those products are either approved by the FDA or are included in an Emergency Use Authorization. *Id*.

If Defendant is correct, then *every single person or entity* who wore a mask, got screened with a COVID-19 test, or even practiced social distancing, would be entitled to remove a state law negligence claim under the PREP Act on this complete preemption theory. It is not surprising that this theory has been widely rejected. *See supra*. at 7. The Court agrees with Plaintiff's reasoning that "policies" and "procedures" are not "Covered Countermeasures" under the PREP Act. Rather, based on the statutory language, the Covered Countermeasures are physical products that range from medications, to devices (such as ventilators), to diagnostics. *See* Pl.'s Br. 29-30, EC No. 15. "The Department of Health and Human Services has published a list of all the 'countermeasures' covered under the Secretary's declaration… Of note, all the items listed in Exhibits 3 and 4 are **drugs or other physical products**. Of further note, there is not a single policy, procedure, protocol, guideline, or recommendation listed. Specifically, screening employees before allowing them to enter the facility is not listed as a covered countermeasure. Neither is 'social distancing' or 'discontinuing group activities.'" *See id.* (emphasis added); *see also* Exhibit 3 & Exhibit 4, ECF No. 15-1. The logical result of Defendant's argument is that any person who implemented any kind of COVID-19 "precaution," such as cancelling an event, or not cancelling an event for that matter, would qualify as a person who used "Covered Countermeasures." Supp. Br. 12, ECF No. 11. The PREP Act is not so broad to say that every person who did anything at all to "counter"

COVID-19 was necessarily a "Covered Person" who used or administered a "Covered Countermeasure."

Here, Plaintiff's petition mentions COVID-19 once. Pet. 4, ECF No. 1-5. At its core, the petition accuses Defendant of neglect. *See Dupervil*, 2021 WL 355137 at *12 ("[T]he crux of Plaintiff's claims is that his father died because Defendants failed to take certain steps . . .. These alleged failures cannot be said to be administering—or even prioritizing or purposefully allocating—a drug, biological product, or device to an individual within the meaning of the PREP Act such that Plaintiffs' claims are completely preempted."). Plaintiff's allegations control – and since the petition is entirely devoid of any allegation of negligence regarding the use or administration of Covered Countermeasure, this is fatal to Defendant's removal on preemption grounds. Pl. Pet. 4, ECF No. 1-5. Accordingly, federal jurisdiction is not proper under the PREP Act because Plaintiff's claims do not fall within its scope. Finding that complete preemption[2] is not applicable here, the Motion to Remand must be granted unless *Grable* applies, or Lake Worth is a "federal officer."

### B. Federal-Question Jurisdiction

The question whether a claim arises under federal law must be determined by reference to the well-pleaded complaint and a defense that raises a federal question, or defensive preemption, is inadequate to confer federal jurisdiction. *See Merrell Dow Pharm.*, 478 U.S. at 807. But a court may determine that a state-law claim "arises under" federal law if the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may

---

[2] Defendant argues that the Court should rely on the Secretary's opinion that the PREP Act is a "complete preemption" statute. However, the Court would not defer to the Secretary's assertion that federal courts have subject-matter jurisdiction over state law negligence claims under the PREP Act. *See Schuster v. Percheron Healthcare, Inc.,* 493 F. Supp. 3d 533, 538 (N.D. Tex. 2021) (Pittman, J.) (holding that HHS has not been given congressional authority to promulgate rules and regulations regarding federal subject-matter jurisdiction, therefore, anything the Secretary has to say regarding complete preemption will not be afforded deference).

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314.

In support of its argument that *Grable* provides a basis for removal, Lake Worth cites to the Fourth Amendment of Secretary Azar's declaration regarding the PREP Act. The Secretary attests that:

> There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities. The world is facing an unprecedented global pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act. Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons is an exclusive Federal cause of action against a Covered Person for death or serious physical injury proximately caused by willful misconduct by such Covered Person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act. Through the PREP Act, Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations.

Declaration, Fourth Amendment, 2020 WL 7227356, 85 FR 79190, 79194 (Dec. 9, 2020).

Defendant argues that by the express terms of the Secretary's Fourth Amendment, removal is proper under *Grable*'s first prong because Plaintiff's state law claims raise a substantial issue of federal law involving the interpretation and application of the PREP Act. However, this is insufficient to demonstrate that the court has federal question-based removal jurisdiction. *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 338 (5th Cir. 2008) (concluding that merely stating that a state-law claim raises a "disputed and substantial question of federal law" and that claim implicates "strong federal interest" is insufficient to satisfy *Grable* when defendant did not identify a state claim that met the three requirements of *Grable*). Mere presence of a potential

10

federal issue in a state cause of action does not automatically confer federal-question jurisdiction, *Merrell Dow Pharm.,* 478 U.S. at 813; *Grable,* 545 U.S. at 314, and there is a "need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction," *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

It is important to note that Defendant selectively cites the Declaration to support its conclusory argument that removal is proper under *Grable*. Supp. Br. 21, ECF No. 11. Defendant omitted the portion of the Declaration that provided context for the Secretary's opinion which was it applied to Covered Persons and Covered Countermeasures. The Court finds that the Declaration may be persuasive if Plaintiff's claims were otherwise within the scope of the PREP Act, by alleging negligence in the use or administration of a "Covered Countermeasure." However, as described above, Plaintiff's claims are not within the scope of the PREP Act, therefore, the Secretary's Declaration that claims under the PREP Act involve substantial federal legal and policy issues is irrelevant to this case.

Further, Defendant argues that this case involves national importance. According to Defendant's argument, every negligence cause of action that was, even tangentially, related to COVID-19 protocols should be removable under *Grable*. However, Defendant has the burden to show that state and federal balance of power would not be disrupted by exercising jurisdiction in a case like this. Defendant cannot credibly argue that no disruption would occur, which is likely why Defendant chose to address this in only a conclusory manner. Supp. Br. 21, ECF No. 11 ("Federal jurisdiction over Plaintiff's claims will not disturb federal-state comity principles under *Grable*."). Contrary to Defendant's conclusory statement, federal courts would be swamped with pure state-law negligence claims that otherwise have no basis for federal jurisdiction if every negligence claim that arose during COVID-19 was removeable under *Grable*. Accordingly, the

11

Court joins the clear majority and finds that *Grable* does not support exercising jurisdiction over this case.

### C. Federal-Officer Removal Jurisdiction

Lastly, Defendant grasped for federal subject-matter jurisdiction on the ground that the nursing home is a "federal officer." Not. Removal, ECF No. 1. "Federal officers may remove cases to federal court that ordinary federal question removal would not reach." *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290–91 (5th Cir. 2020) (holding that removal was proper where a plaintiff sued a government contractor for negligence and the government contractor acted in accordance with instructions received from U.S. Navy officials for asbestos refurbishing of a military ship). Section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response. 28 U.S.C. 1442(a). As the Supreme Court has explained, "the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Mesa v. California*, 489 U.S. 121, 136 (1989). The Court has consistently urged courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

To remove under Section 1442(a), a defendant must show (1) it has asserted a colorable federal defense; (2) it is a "person" within the meaning of the statute; (3) that has acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais*, 951 F.3d at 296. The cases Defendant cites each deal with a government contractor removing a negligence lawsuit based on federal officer removal jurisdiction. Defendant is neither a government contractor nor is there any indication that Defendant "acted pursuant" to a federal officer's direction by any other means than simply

12

complying with the law. *See Bell v. Thornburg*, 743 F.3d 84, 88–89 (5th Cir. 2014) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152) (holding that merely complying with the law is not sufficient to establish a party acted under a federal officer's direction). Lake Worth asserts it is a federal officer because it "took direction" from the Centers for Medicare and Medicaid[3]. Lake Worth's argument that it is a federal officer because it implemented COVID-19 protocol that the federal government promulgated generally *to the entire country* is borderline frivolous. Lake Worth is not a federal officer; therefore, the federal officer removal statute is not a ground for jurisdiction in this case.

Defendant filed nearly eighty pages of briefing to show that it believed removal was proper, but noticeably absent from the briefing are citations to the plethora of cases addressing, and rejecting, the exact arguments asserted here. The scarce resources of federal courts should not be devoted to litigants who exercise removal and assert subject-matter jurisdiction with an attitude of "let's see what sticks." All doubts must be resolved in favor of remand, and as described above, the Court has several reasons to doubt the propriety of removal in this case. Because all three of Defendant's alleged grounds for removal are meritless, the Motion to Remand must be **GRANTED.**

### D. Attorney's Fees

Moody asks the Court to award her attorney's fees under 28 U.S.C. 1447(c). Mot. Remand, ECF No. 15. When removal is improper, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28

---

[3] "[A] highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Watson v. Philip Morris*, 551 U.S. 142, 153 (2007).

U.S.C. § 1447(c). The standard for awarding fees is whether removal was objectively reasonable. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 n.2 (5th Cir. 2001); *Carrington Court Homeowners Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, No. 4:17-cv-00768-O, 2018 WL 10550606, at *3 (N.D. Tex. Feb. 1, 2018) (O'Connor, J.).

Removal was not objectively reasonable in this case. Although the PREP Act does provide for federal jurisdiction in some circumstances, those facts are simply not present here. Defendant asserted the same arguments that other health-care facilities have advanced over the last several months in each federal district court that has addressed this issue. However, as addressed above, Defendant did not have an arguable basis for this removal. Defendant is not accused of a failure in the use or administration of a specific Covered Countermeasure under the PREP Act. Additionally, Defendant cites only a portion of the Secretary's declaration as the *sole* reason why *Grable* jurisdiction applies, but it too addresses Covered Countermeasures and is not applicable here. Finally, Lake Worth claimed jurisdiction exists because it is a federal officer implementing COVID-19 guidelines. A cursory attempt to research the law in this circuit regarding federal officer removal would have shown Defendant that making that argument is dubious.

Accordingly, the Court **GRANTS** Moody's request for reasonable attorney's fees and costs incurred for Lake Worth's removal of this action to federal court. The Court **ORDERS** Lake Worth to pay Moody $1,000.00 for reasonable and necessary attorney work.

### IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Plaintiff's Motion to Remand (ECF No. 14) and this action is hereby **REMANDED** to 153rd Judicial District Court of Tarrant County, Texas.

**SO ORDERED** on this **26th day** of **May, 2021.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

14